UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BEAUMONT MEDICAL CENTER HOTEL, LLC, | : :  : |
| *Plaintiff,* | : : : C.A. NO.: 22-cv-2585 |
| v. | : : |
| MT. HAWLEY INSURANCE COMPANY and RENAISSANCE RE SYNDICATE 1458 LLOYD'S, | : : : |
| *Defendants.* | : : : |

NOTICE OF REMOVAL

Defendant Mt. Hawley Insurance Company ("Mt. Hawley"), by and through undersigned counsel, hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. This Court has original jurisdiction over this action pursuant to § 1332 because, upon information and belief, there is complete diversity of citizenship between Mt. Hawley, co-defendant Renaissance Re Syndicate 1458 Lloyd's ("Syndicate 1458") (collectively, with Mt. Hawley, "Defendants"), and Beaumont Medical Center Hotel, LLC ("Plaintiff" or "BMCH"), and the amount in controversy exceeds $75,000, exclusive of interest and costs. In support of this Notice, Mt. Hawley states as follows:

**I.  BACKGROUND AND PROCEDURAL HISTORY**

   **A.  THE STATE COURT ACTION**

   1.  Plaintiff commenced a civil action on February 25, 2022 by filing its Complaint and Request for Declaratory Relief (the "Complaint") in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, captioned as *Beaumont Medical Center Hotel, LLC v. Mt.*

1

*Hawley Ins. Co., et al*, Case No. 2022CH01622 (the "State Court Action"). The Complaint names Mt. Hawley and Syndicate 1458 as the only defendants.

2. Mt Hawley has reviewed the docket for the State Court Action, a copy of which is attached hereto as **Exhibit A** and made a part hereof, along with a copy of the complaint and purported return of service provided to Mt. Hawley by counsel for Plaintiff. Service of process was never effectuated on Mt. Hawley or an agent for service authorized by Mt. Hawley, as discussed more fully below. Accordingly, Mt. Hawley has not been "served" with any of the documents referenced in 28 U.S.C. § 1446(a).

3. This Notice of Removal is timely filed prior to Plaintiff effectuating proper service of the Complaint on Mt. Hawley, in accordance with 28 U.S.C. §§ 1441(b)(2), 1446(b). As set forth in further detail below, Plaintiff purports to have attempted service on Mendes & Mount, Syndicate 1458's agent for service, but Mendes & Mount has no record of receiving service for either defendant. In any event, Mendes & Mount was not Mt. Hawley's agent for service. Because Mt. Hawley "was never served with formal process, . . . [its] removal clock never started ticking." *Grandinetti v. Uber Techs., Inc.*, 476 F. Supp. 3d 747, 753 (N.D. Ill. 2020).

4. Given that neither Mt. Hawley nor Syndicate 1458 were "properly joined and served," as those terms are used in 28 U.S.C. § 1446(b)(2)(A), consent is not technically required. Nonetheless, out of an abundance of caution, Syndicate 1458 has consented to Mt. Hawley's removal. *See* 28 U.S.C. § 1446(b)(2)(A), (C).

B. **PLAINTIFF'S CLAIMS**

5. Plaintiff alleges that it is a Texas corporation that "is a hotel management company." (**Ex. E**, Complaint, ¶ 1).[1] Plaintiff alleges that it purchased a commercial property insurance policy from Defendants, and that it is entitled to business income, extra expense and civil authority coverage under said policy. (*Id.* at ¶¶ 5, 7).

6. Plaintiff alleges that it "sustained loss(es) due physical alteration of the [insured] properties caused by the physical presence of SARS-CoV-2 and COVID-19 at, in, on, and/or around their premises," and that "[i]t also sustained losses due to the denial of access and ingress-egress due to the civil authority orders issued by the Governor of Texas addressing SARS-CoV-2 and COVID-19 Pandemic." (*Id.* at ¶¶ 16, 18). Plaintiff does not specifically allege that its losses occurred during a specific period of time, and it appears to allege ongoing damages. *See id.* at ¶ 143 ("COVID-19 has caused and . . . is continuing to cause, physical loss and/or damage or destruction to Plaintiff's property").

7. In describing its alleged loss, Plaintiff claims that:

> Plaintiff sustained loss of Business Income and necessary Extra Expense caused by the direct physical alteration and direct physical damage to its property. Plaintiff also experienced covered losses resulting from the actions of civil authorities that have prohibited access to the described premises . . . [and] professional fees as a direct result of the presence of COVID-19 particles.

(*Id.* at ¶ 123). The Complaint further alleges that "Plaintiff is entitled to coverage for the physical loss and/or damage up to the Policy's $13,160,000 dollars in coverage." (*Id.* at ¶ 135).

8. Plaintiff alleges that it sought coverage under an insurance policy (the "Policy") from Defendants and that Defendants denied coverage. (*Id.* at ¶¶ 124–25). A copy of the subject

---

[1] Although alleging that it is a corporation, Plaintiff's certificate of formation from the Texas Secretary of State (a copy of which is attached hereto as **Exhibit C**), reflects that it is a Texas limited liability company which is relevant with respect to Plaintiff's citizenship under 28 U.S.C. § 1332.

3

policy is attached hereto as **Exhibit B**. Plaintiff seeks to recover for loss of business income and extra expenses under the Policy, resulting from the COVID-19 pandemic. (Compl. at ¶ 123).

9. The Complaint asserts four causes of action against Defendants: Count I–"Declaratory Judgment," ¶¶ 126–29; Count II–"Breach of Contract – Property Loss and/or Damage," ¶¶ 130–39; Count III–"Breach of Contract – Business Interruption Coverage," ¶¶140–49; and Count IV–"Violation of § 155 Illinois Insurance Code," ¶¶ 150–60. In addition to claiming that it "is entitled to coverage . . . up to the Policy's $13,160,000 dollars in coverage," *id.* at ¶ 135, BMCH claims that it is entitled to damages for its statutory claim, including "attorney's fees, . . . consequential damages and lost profits, [and] exemplary damages." *Id.* at ¶ 159.

**II.   VENUE**

10. Venue is proper in this Court because it is the district embracing the place where the State Court Action is pending. 28 U.S.C. § 1441(a); *see also Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953).

**III.   GROUNDS FOR REMOVAL**

11. Section 1332(a) permits removal of state court actions to federal district courts where (1) complete diversity of citizenship exists between the parties; and (2) the amount in controversy exceeds $75,000. This action satisfies both conditions. Moreover, under § 1441(b)(2), a defendant may remove an action that otherwise would be precluded from removal pursuant to the forum defendant rule where a party is not yet "properly joined and served"—so called "snap removal." *See, e.g.*, *Wragge v. Boeing Co.*, 532 F. Supp. 3d 616, 620 (N.D. Ill. 2021) (noting that "most courts that have addressed the issue have allowed removal even in the face of a forum defendant"); *Grandinetti*, 476 F. Supp. 3d at 754 ("The plain meaning of the governing statute leaves no wiggle room: removal is barred only when any 'properly joined and *served*' defendant

4

is a forum citizen.") (emphasis in original); *see also Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F. 3d 147, 152 (3d Cir. 2018) ("[W]e conclude that the language of the forum defendant rule in section 1441(b)(2) is unambiguous. Its plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served."). Here, Mt. Hawley, the only defendant that is a citizen of Illinois, has not been properly served, precluding application of the forum defendant rule.

### A. COMPLETE DIVERSITY OF CITIZENSHIP EXISTS

12. Mt. Hawley is a citizen of the State of Delaware, which is its state of incorporation, and Illinois, where it maintains its principal place of business. *See* 28 U.S.C. § 1332(c)(1); *Dalton v. Teva N. Am.*, 891 F.3d 687, 690 (7th Cir. 2018) ("what matters for the citizenship of a corporation is its state of incorporation and its principal place of business").

13. Syndicate 1458 is an unincorporated association for jurisdictional purposes and the citizenship of each of Syndicate 1458's underwriters—also referred to as "members" and "names"—determines its citizenship. *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 320 (7th Cir. 1998) ("Lloyd's of London must be treated like limited partnerships for purposes of determining their citizenship" and "[t]his means that each syndicate has the citizenship of each participating 'name'"). Syndicate 1458 has a single member, RenaissanceRe Corporate Capital (UK) Limited, which is an English corporation with its principal place of business in London, England. As such, Syndicate 1458 is a citizen of England and not Texas. *See id.*; 28 U.S.C. § 1332(a)(3) (creating diversity jurisdiction in cases between "citizens of different States and in which citizens or subjects of a foreign state are additional parties").[2]

---

[2] *See also New Dimensions High Sch., Inc. v. Mt. Hawley Ins. Co.*, 2019 WL 13063706, at *1 (M.D. Fla. Apr. 8, 2019) (denying motion to remand because Syndicate 1458 was a citizen of England).

14. Plaintiff is a not a citizen of Illinois or England. According to the Complaint and records maintained by the Texas Secretary of State, Plaintiff is a Texas limited liability company.[3] For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its members. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 533 (7th Cir. 2007) ("the citizenship of an LLC is the citizenship of each of its members"). According to a record of Plaintiff's status as a limited liability company available on the Texas Secretary of State's website, Plaintiff is managed by three managers who are individuals that are citizens of Texas. (**Ex. C**). Therefore, Plaintiff is a citizen of Texas for purposes of diversity jurisdiction.

15. Accordingly, there is complete diversity of citizenship between the parties.

    **B.**    **THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

16. Under 28 U.S.C. § 1332(a), diversity subject matter jurisdiction requires that the matter in controversy "exceed[] the sum or value of $75,000, exclusive of interest and costs."

17. The notice of removal may assert the amount in controversy where, as here, a case is removed from a state court that does not permit a plaintiff to demand a specific sum of money. 28 U.S.C. § 1446(c)(2)(A)(ii). The Seventh Circuit has proposed several, non-exhaustive, methods by which a removing defendant may produce a good faith estimate of the amount in controversy, including:

> by calculation from the complaint's allegations . . .; by reference to the plaintiff's informal estimates or settlement demands . . . ; or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.

---

[3] Attached hereto as **Ex. C** is a record of Plaintiff's 2011 certificate of formation and 2021 annual filing, obtained from the Texas Secretary of State's website, which reflect that it a Texas limited liability company.

*Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579–80 (7th Cir. 2017) (noting that "any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to").

18. A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and, if contested, a court will determine whether the threshold is met by a preponderance of the evidence. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 90 (2014); *see also Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (removing party's "good-faith estimate is acceptable if it is plausible and adequately supported by the evidence").

19. As discussed below, Plaintiff seeks breach of contract damages arising from the denial of coverage for Plaintiff's claimed losses under the Policy's Business Income, Extra Expense, and Civil Authority provisions. (**Ex. E**, Complaint, Counts II, III). Plaintiff also seeks damages arising out of Defendants' alleged "violations of §155 of the Illinois Insurance Code". (*Id.*, Count IV). These allegations make clear that the amount in controversy is satisfied here. *See Midland Mgmt. Co. v. Am. Alternative Ins. Corp.*, 132 F. Supp. 3d 1014, 1020 (N.D. Ill. 2015) ("[insurer] has readily alleged that the amount in controversy in this case is more than $75,000").

20. Plaintiff alleges that it suffered Business Income losses as a result of the governmental orders issued in response to COVID-19 and the presence of COVID-19 itself, which Plaintiff alleges required closure of its hotel or to operate at a "severely reduced capacity." (Compl. at ¶ 64 ("As a result [of the presence of COVID-19], Plaintiff's premises were forced to close or operate at a severely reduced capacity"), ¶ 72 ("Closure Orders relevant to this [*sic*] have directly impacted Plaintiff's businesses by forcing them to limit operations across all locations and some have had to cease operations completely"), ¶ 116 (similar). Plaintiff alleges that "[a]s a result of

7

the presence of COVID-19 and the Closure Orders, Plaintiff lost business income and incurred extra expenses (*Id.* at ¶ 116).

21. While Plaintiff does not identify a specific time period, it identifies closure orders beginning in March 2020, *id.* at ¶¶ 86–89, and alleges that, "COVID-19 has caused and . . . *is continuing to cause*, physical loss and/or damage or destruction to Plaintiff's property," indicating that its losses are purportedly ongoing since March of 2020. Compl., at ¶ 143 (emphasis supplied).

22. In addition to alleging loss of Business Income, the Complaint avers that Plaintiff was forced to incur substantial costs arising out of the governmental orders and COVID-19 that it claims are covered under the Policy's Extra Expense provision. (*Id.* at ¶¶ 116, 123).

23. The Policy provides Business Income and Extra Expense coverage for actual loss sustained for up to $1,000,000, subject to the terms, provisions, exclusions, and limitations of the Policy. (**Ex. B**, Policy, at 7 of 98.) The Policy covers the actual loss of "Business Income," which is defined as "Net Income (Net Profit or Loss before income taxes) that you would have earned or incurred; and . . . Continuing normal operating expenses incurred, including payroll." (*Id.* at 25 of 98). The Policy also provides that, with regard to Civil Authority coverage, Mt. Hawley will pay "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises," provided that other requirements are satisfied. *See id.* at 26 of 98.

24. In a letter dated June 12, 2020, a representative of Plaintiff provided notice of the claim that is the subject of this litigation to Mt. Hawley, and that representative advised Mt. Hawley that:

> "[b]ased on the evidence now available to us which will be supported by a sworn proof of claim shortly, for purposes of this notice letter we estimate our clients' **damages will exceed the limits of the policies** [*sic*]."

8

June 12, 2020 Corr. from A. Levine to RLI Ins. Co. (emphasis supplied) (attached hereto as **Exhibit D**). *See Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006) (court may consider settlement offer in determining amount in controversy, when the offer is used "to show the stakes, a question independent of the claim's merit"); *Dugar v. U.S. Bank Nat'l Ass'n*, No. 21 CV 4052, 2021 WL 6063869, at *3 (N.D. Ill. Dec. 22, 2021) (considering plaintiff's pre-suit demand). In the letter, Plaintiff also noted that it "project[ed] losses for several more months." (**Exhibit D**).

25. Separate and apart from the contractual damages sought, Plaintiff also claims that it has sustained damages as the result of "Defendants' [alleged] violations of §155 of the Illinois Insurance Code," namely Defendants' purported denial of coverage without a reasonable basis upon which to do so. *See* Compl, ¶¶ 155–59. In relevant part, under 215 Ill. Comp. Stat. 5/155(1), in addition to contractually viable claims:

> the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
> (b) $60,000[.]

As a result, on this cause of action, Plaintiff potentially would be entitled to the lesser of $60,000 or 60% of the amount of its claim, if successful.

26. While Mt. Hawley denies that the Complaint adequately pleads entitlement to any relief under 215 Ill. Comp. Stat. 5/155, and denies that this statute applies, such penalties are properly included in determining the jurisdictional amount. *See Identity Dental Mktg., LLC v. Twin City Fire Ins. Co.*, No. 20-CV-06883, 2021 WL 3524111, at *3 (N.D. Ill. July 19, 2021) (including 215 Ill. Comp. Stat. 5/155(1) penalties in the amount in controversy); *Kaplan v.*

9

*Standard Ins. Co.*, 2013 WL 5433463, at *4 (N.D. Ill. Sept. 30, 2013) ("Subject-matter jurisdiction exists unless it is clear beyond a legal certainty that, even with the addition of the penalty, the plaintiff would not be entitled to recover an amount sufficient to satisfy the jurisdictional amount."). These extra-contractual damages claimed by Plaintiff, if awarded in addition to any contractual damages that may be awarded, further establish that the $75,000 amount in controversy requirement is met.

27. Additionally, Plaintiff specifically asserts a claim for attorney's fees (Compl., ¶¶ 159–60, Prayer for Relief), which, under 215 Ill. Comp. Stat. 5/155, a successful insured may recover. Plaintiff's claim for attorney's fees also should be considered in assessing the amount in controversy. *ABM Sec. Servs., Inc. v. Davis*, 646 F.3d 475, 479 (7th Cir. 2011) (attorneys' fees can be included in the amount in controversy); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510–11 (7th Cir. 2006) ("an award of fees is properly considered").

28. For all of the foregoing reasons, the Complaint and other relevant available evidence demonstrate that Plaintiff is seeking damages in excess of $75,000, exclusive of interest and costs. Therefore, the amount-in-controversy requirement under 28 U.S.C. § 1332(a) has been met. *Dart Cherokee*, 574 U.S. at 90.

### C. THE FORUM DEFENDANT RULE DOES NOT APPLY

29. As of the filing of this Notice of Removal, no defendant that is also citizen of the State of Illinois has been properly joined and served in this case, barring application of the forum defendant rule based on the plain text of the applicable statute. *See* 28 U.S.C. § 1441(b)(2).

30. As is relevant here, 28 U.S.C. § 1441(b)(2) provides that:

> A civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest ***properly joined and served*** as defendants is a citizen of the State in which such action is brought.

(Emphasis supplied). As a result, a forum defendant may effectuate removal if any forum defendant has not been "properly joined and served" at the time of removal—also known as a "snap removal."

31. The Northern District of Illinois has repeatedly recognized that an action is removable where a forum defendant has not yet been served. *See, e.g.*, *I.T.M. v. Midwest Can Co., LLC*, 2021 WL 170734, at *1 (N.D. Ill. Jan. 19, 2021) (Dow, J.) ("the Court agrees with the vast majority of courts in determining § 1441(b)(2)'s plain text permits preservice removal," upholding snap removal); *Tavistock Rest. Grp., LLC v. Zurich Am. Ins. Co.*, 2021 WL 1614519, at *2–4 (N.D. Ill. Apr. 26, 2021) (Kness, J.) (similar holding in the context of another COVID-19 business interruption case); *Grandinetti*, 476 F. Supp. 3d at 749 (Chang, J.) (similar); *Serv. Corp. Int'l v. Stericycle, Inc.*, No. 20 C 838, 2020 WL 6565253, at *2 (N.D. Ill. Nov. 9, 2020) (Kendall, J.) (similar); *Graff v. Leslie Hindman Auctioneers, Inc.*, 299 F. Supp. 3d 928, 934 (N.D. Ill. 2017) (St. Eve, J.) (similar); *Selective Ins. Co. of S. Carolina v. Target Corp.*, 2013 WL 12205696, at *1 (N.D. Ill. Dec. 13, 2013) (Bucklo, J.) (similar); *Maple Leaf Bakery v. Raychem Corp.*, 1999 WL 1101326, at *1 (N.D. Ill. Nov. 29, 1999) (Lindberg, J.) ("the language 'and served', precludes removal on the basis on the presence of resident defendants only when those defendants were properly joined and served at the time of removal").[4]

32. Although the Seventh Circuit has yet to opine on the issue, federal courts of appeals have reached the same conclusion. *See Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc., Texas Brine*, 955 F.3d 482, 486–88 (5th Cir. 2020) ("forum-defendant rule's procedural barrier to removal was irrelevant because the only defendant 'properly joined and served' . . . was not a

---

[4] *See also Wragge*, 532 F. Supp. 3d at 620 (same); *West Bend Mut. Ins. Co. v. MSPPR, LLC*, 2021 WL 463259, at *2 (N.D. Ill. Feb. 9, 2021); *D.C. v. Abbott Labs, Inc.*, 323 F. Supp. 3d 991, 994 (N.D. Ill. 2018).

citizen of . . . the forum state"); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 707 (2d Cir. 2019) ("the result here—that a home-state defendant may in limited circumstances remove actions filed in state court on the basis of diversity of citizenship—is authorized by the text of Section 1441(b)(2)"); *Encompass Ins. Co.*, 902 F.3d at 153–54 (similar).

33. Courts also acknowledge that, where a plaintiff attempts but fails to *properly* effectuate service on a forum defendant, snap removal is proper because the forum defendant has not been "properly joined and served," as expressly required by § 1441(b)(2). *See, e.g.*, *Williams v. Boyd Racing LLC*, 2016 WL 236993, at *4 (W.D. La. Jan. 19, 2016) (denying motion to remand where plaintiff could not show that service was proper because the "[forum defendant] is considered a non-served defendant in this matter").

34. Plaintiff claims to have effectuated service on Mendes & Mount, but Mendes & Mount has advised that it has no record of receiving service of this matter on behalf of either defendant. Accordingly, removal to this Court is proper because Mt. Hawley—the only forum defendant—was never "properly joined and served" prior to the filing of this Notice of Removal.

35. Even if Plaintiff had effectuated service on Mendes & Mount (and it has not), under the Policy, Mendes & Mount is designated as Syndicate 1458's agent for service, not Mt. Hawley's agent. (**Ex. B**, 89 of 98 ("Service of Suit Clause (U.S.A.)" endorsement for Syndicate 1458, also known as "Underwriters," appointing Mendes & Mount as its domestic agent for service)). Rather, Mt. Hawley's agent for service designated in the Policy is the applicable Superintendent, Commissioner or Director of Insurance. (*Id.* at 90 of 98 ("Service of Suit Endorsement" for Mt. Hawley)). Plaintiff could have easily effectuated service on Mt. Hawley by serving the Illinois Director of Insurance, but did not do so.

36. Where an "attempt at service occurred before the case was removed, Illinois service of process rules govern whether the attempt was legally sufficient." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). To effectuate service under Illinois law, an agent must have *actual* and not merely *apparent* authority to accept service. *See, e.g.*, *Dei v. Tumara Food Mart, Inc.*, 406 Ill. App. 3d 856, 862, 941 N.E.2d 920, 925 (2010) ("For service of process on a corporation to be effectively made upon an agent of defendant, such agent must have actual authority to accept service on behalf of the corporation"); *Slates v. Int'l House of Pancakes, Inc.*, 90 Ill. App. 3d 716, 728, 413 N.E.2d 457, 466 (1980) ("for service of process to be effectively made upon an agent of the defendant, such agent must have actual authority" (citing *Barnard v. Springfield & N.E. Traction Co.*, 274 Ill. 148, 151, 113 N.E. 89, 90 (1916) ("agent must be one actually appointed by the corporation and representing the corporation in some line of employment authorized by its charter, and *not one created by implication or construction and contrary to the intention of the parties*" (emphasis supplied))).

37. Thus, even if Plaintiff had effectuated service on Mendes & Mount (and it did not), Mendes & Mount did not have actual authority to accept service on behalf of Mt. Hawley, making any purported service on it a legal nullity. Without serving an agent with actual authority to accept service, Plaintiff has failed to effectuate service on Mt. Hawley, and thus Mt. Hawley was not "properly joined and served" under 28 U.S.C. § 1441(b)(2).

**IV. CONCLUSION**

38. A copy of this notice of removal is being served upon all known counsel of record in accordance with 28 U.S.C. § 1446(d).

39. As required by 28 U.S.C. § 1446(a), a copy of the docket from the State Court Action, along with the Complaint, exhibit, and affidavit of service, is attached hereto as **Exhibit**

A.

40. In accordance with 28 U.S.C. § 1446(d), a copy of the Notice to the Clerk of Court for the Circuit Court of Cook County, Illinois, County Department, Chancery Division, which will be promptly filed in that Court, is attached hereto as **Exhibit F**.

**WHEREFORE**, pursuant to 28 U.S.C. §§ 1441, 1446, and 1332, Defendant Mt. Hawley Insurance Company requests that this action be removed from the Circuit Court of Cook County, Illinois, County Department, Chancery Division to the United States District Court for the Northern District of Illinois, and that this Court enter such further orders as may be necessary and appropriate.

Respectfully submitted,

**DEFENDANT,
MT. HAWLEY INSURANCE COMPANY,**

/s/ *Matthew S. Ponzi*
Matthew S. Ponzi
**Foran Glennon Palandech Ponzi & Rudloff P.C.**
222 N. LaSalle Street,
Suite 1400
Chicago, Illinois 60601
Office: 312.863.5070
Dated: May 16, 2022    Email: mponzi@fgppr.com

Wystan M. Ackerman
(*pro hac vice* motion forthcoming)
Wm Maxwell Daley
(*pro hac vice* motion forthcoming)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Phone: 860-275-8200
Fax: 860-275-8299
wackerman@rc.com
wdaley@rc.com

14

**CERTIFICATE OF SERVICE**

  I hereby certify that on May 16, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system, and by first-class mail, postage prepaid, to any parties that cannot be served through the Court's CM/ECF system.

                   */s/ Matthew S. Ponzi*