IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEAUMONT MEDICAL CENTER HOTEL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MT. HAWLEY INSURANCE COMPANY, et al., <br><br> Defendants. | No. 22-cv-02585 <br><br> Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiff Beaumont Medical Center Hotel, LLC ("Beaumont"), a Texas-based hotel management company, maintained a commercial property insurance policy issued by Defendants Mt. Hawley Insurance Company and Renaissance Re Syndicate 1458 Lloyd's (collectively, "Defendants"). Due to the COVID-19 pandemic and resultant civil authority orders in Texas, Beaumont sought indemnification from Defendants for business losses it suffered. Defendants denied Beaumont's claim. Beaumont subsequently brought the present action against Defendants alleging breach of contract and violations of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155. Now before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 25.) For the following reasons, Defendants' motion is granted.

## BACKGROUND

For purposes of Defendants' motion to dismiss, the Court accepts all well-pleaded facts in the Complaint as true and views those facts in the light most favorable to Beaumont as the nonmoving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Complaint alleges as follows.

Beaumont, a Texas-based hotel management company, purchased a commercial property insurance policy ("Policy") from Defendants. (Compl. ¶¶ 1–3, 7, Dkt. No 7-1.) Under the Policy, Defendants agreed to provide Beaumont with coverage for loss of business income, extra expense, loss of ingress-egress, and denial of access by civil authority orders. (*Id.* ¶ 14.)

During the COVID-19 pandemic, Beaumont sustained losses at the insured premises due to the spread of COVID-19 and statewide and local governmental orders. (*Id.* ¶¶ 16–19.) Specifically, individuals who tested positive for COVID-19 or otherwise carried the virus visited or worked at the insured premises. (*Id.* ¶¶ 102, 106–07.) The virus was also present in the air and on objects and surfaces of the insured premises. (*Id.* ¶¶ 102, 105, 108.) As a result, Beaumont installed new air filters at its businesses. (*Id.* ¶ 112.) In addition, starting in March 2020, the Governor of Texas and City of Houston issued a series of orders restricting large social gatherings and prohibiting or limiting occupancy for dine-in services at businesses. (*Id.* ¶¶ 75–83, 86–93.) In addition, the Governor imposed a face covering requirement for persons inside commercial locations. (*Id.* ¶ 84.) Harris County Judge Lina Hidalgo further ordered Harris County residents to stay at home, except as necessary for essential services. (*Id.* ¶ 89.) Together, those civil authority orders forced Beaumont's businesses to limit or cease operations, and the presence of the COVID-19 virus on the premises made them unfit for their intended uses. (*Id.* ¶¶ 63, 72.) Consequently, Beaumont submitted a claim to Defendants for its lost business income and extra expenses. (*Id.* ¶¶ 116–17.) However, Defendants denied its claim. (*Id.* ¶ 117.)

Beaumont then brought this action against Defendants for their failure to tender coverage for its business interruption losses from the COVID-19 pandemic and civil authority orders. In its Complaint, Beaumont asserts the following claims: a claim for a declaratory judgment that it is entitled to coverage under the Policy (Count I); a claim for breach of contract based on

2

Case: 1:22-cv-02585 Document #: 50 Filed: 03/13/24 Page 3 of 15 PageID #:1072

Defendants' failure to provide coverage for physical losses or damage to Beaumont's properties (Count II); a claim for breach of contract based on Defendants' refusal to provide business interruption coverage for Beaumont's business interruption losses and extra expenses (Count III); and a claim for violation of §155 of the Illinois Insurance Code based on Defendants' unreasonable denial of Beaumont's claim (Count IV).

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Although the Court accepts the plaintiff's well-pleaded factual allegations as true, conclusory allegations are not sufficient to avoid dismissal. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Defendants argue that the Complaint must be dismissed pursuant to Rule 12(b)(6) because the Policy's business income, extra expense, and civil authority provisions require direct physical loss or damage to property, which Beaumont has not pleaded. Alternatively, Defendants contend that Beaumont's claims for coverage are barred by the Policy's loss of use exclusion and ordinance or law exclusion.

I.     **Evidentiary Objections**

As an initial matter, the Court addresses Beaumont's evidentiary objections. In particular, Beaumont requests that the Court disregard the three exhibits attached to Defendants' motion to dismiss because the exhibits are not necessary to interpret the Policy. Two of the exhibits are governmental orders regarding the COVID-19 pandemic from Texas Governor Greg Abbott, the Texas Commissioner of the Department of Health Services, the Mayor of Houston, and Harris County Judge Hidalgo. (Defs.' Mem., Ex. A, Texas Governor & Texas Commissioner Orders, Dkt. No. 26-1; Defs.' Mem., Ex. B, Houston Mayor & Harris County Judge Orders, Dkt. No. 26-2.) The final exhibit is Defendants' claim denial letter, denying Beaumont's claim for coverage for business income losses. (Defs.' Mem., Ex. C, Claim Denial Letter, Dkt. No. 26-3.)

In connection with a motion to dismiss, the Court may consider "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citation omitted). Judicial notice may be taken of "facts that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (quoting Fed. R. Evid. 201(b)(2)). Generally, courts may take judicial notice of public records so long as they are not subject to reasonable dispute. *See Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018).

With respect to the statewide and local governmental orders, the Court finds it appropriate to consider them. Beaumont refers to the "closure orders" numerous times in the Complaint (*see, e.g.*, Compl. ¶¶ 74–95, 115–16), and the orders are central to its claim that it suffered lost business income and extra expenses because of COVID-19 and the resulting governmental orders. Moreover, the governmental orders are also public records of which the

Court may take judicial notice, especially since Beaumont does not dispute their contents or accuracy. *Cf. Brady for Smith v. SSC Westchester Operating Co. LLC,* 533 F. Supp. 3d 667, 674 n.3 (N.D. Ill. 2021) (taking judicial notice of a state governor's executive orders). With respect to Defendants' claim denial letter, however, the Court agrees with Beaumont. Contrary to Defendants' assertion, Beaumont does not refer to the denial letter anywhere in the Complaint. In fact, Beaumont only mentions that Defendants denied its claim for coverage. (Compl. ¶¶ 117, 125.) Additionally, the letter is not a proper subject of judicial notice. Accordingly, the Court will not consider Defendants' claim denial letter in connection with the instant motion to dismiss.

    **II.**    **Breach of Contract and Declaratory Judgment Claims (Counts I, II, and III)**

Turning to the merits of Beaumont's claims, Defendants argue that Beaumont's breach of contract and declaratory judgment claims fail because the COVID-19 virus and related governmental orders did not cause direct physical loss or damage to the subject property, as required by the Policy.

The parties dispute whether Illinois or Texas law applies to Beaumont's claims. When a federal court sits in diversity, it typically applies the substantive law of the forum state, including that state's choice-of-law rules. *Fid. & Deposit Co. of Md. v. Edward E. Gillen Co.*, 926 F.3d 318, 326 (7th Cir. 2019); *In re Jafari*, 569 F.3d 644, 648 (7th Cir. 2009). But Illinois courts do not engage in a choice-of-law analysis if there is no actual conflict between Illinois law and the law of another state; instead, the law of the forum state, Illinois, governs. *See W. Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 223 (7th Cir. 2017). "The party who seeks a choice-of-law determination must establish the existence of an outcome-determinative conflict." *Id.* (citing *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014)). As the Court explains further below, Beaumont has not satisfied its burden to establish

5

the existence of an outcome-determinative conflict between Illinois law and Texas law; accordingly, the Court applies Illinois law.[1]

### A. Business Income and Extra Expense Coverage Provisions

Defendants contend that Beaumont cannot state a claim for coverage under either the Business Income or Extra Expense provisions. The Policy's Business Income provision states:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Complaint, Ex. 1, Policy at 25, Dkt. No. 7-2.) In relevant part, the Extra Expense provision covers the "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." (*Id.*) The "period of restoration" ends either on the date when the property "should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "the date when business is resumed at a new permanent location." (*Id.* at 33.)

Under Illinois law, an insurance policy must "be construed as a whole, giving effect to every provision, if possible." *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 330 (7th Cir. 2021) (quoting *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006)). If the policy language is clear and unambiguous, the words in the policy "must be given their plain, ordinary, and popular meaning." *Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, 33 F.4th 417, 420 (7th Cir. 2022) (citation omitted). Language is not ambiguous merely because the parties contest a term's meaning; rather, "policy language must be subject to

---

[1] Notably, Beaumont offers no argument that it states a claim for coverage under Illinois law, only under Texas law.

more than one reasonable interpretation before it is deemed ambiguous." *Id.* (internal quotation marks and citation omitted).

Beaumont asserts that it has sufficiently pleaded a direct physical loss under the referenced provisions by alleging that (1) the COVID-19 virus was present at the insured premises and physically altered surfaces, objects, and the air at the properties; and (2) Beaumont lost use of its properties due to statewide and local civil authority orders. Ultimately, Seventh Circuit precedent forecloses both arguments.

The Seventh Circuit has consistently held that, under Illinois law, "direct physical loss" in a commercial property insurance policy means a physical alteration to property or complete physical dispossession of property. *See, e.g.*, *Paradigm Care*, 33 F.4th at 421; *Sandy Point*, 20 F.4th at 333–35. With respect to physical alteration to property, "mere loss of use due to COVID-related closures does not constitute 'direct physical loss' when unaccompanied by any physical alteration to property." *E. Coast Ent. of Durham, LLC v. Hous. Cas. Co.*, 31 F.4th 547, 551 (7th Cir. 2022). And the presence of the COVID-19 virus on surfaces or in the air of the insured premises does not physically alter property. *Id.* at 551; *see Sandy Point*, 20 F.4th at 335 ("Even if the virus was present **and** physically attached itself to [the plaintiff's] premises, [the plaintiff] does not allege that the virus **altered** the physical structures to which it attached, and there is no reason to think that it could have done so … [COVID-19's] impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days."); *ABW Dev., LLC v. Cont'l Cas. Co.*, 203 N.E.3d 922, 931 (Ill. App. Ct. 2022) ("[E]ven assuming the COVID-19 virus was present at the premises, the mere presence of the virus on surfaces does not constitute 'physical loss of or damage to property' because COVID-19 does not physically alter the appearance,

7

shape, color, structure, or other material dimension of the property."). Hence, Beaumont's allegations that the civil authority orders forced its businesses to cease operations and that COVID-19 physically altered its properties are insufficient to plead direct physical loss or damage.

Additionally, Beaumont's allegation that it had to install new air filters at its properties to repair the physical loss and damage from COVID-19 cannot save its claims. As other courts have held, voluntary alterations to insured premises to mitigate the spread of the COVID-19 virus do not constitute physical losses or damage to property. *Am. Male & Co. v. Owners Ins. Co.,* No. 21 CV 02595, 2023 WL 2646771, at *6 (N.D. Ill. Mar. 27, 2023) (noting that "courts have repeatedly rejected the argument that such voluntary changes made to properties in response to the COVID-19 pandemic constitute a physical loss"); *see also G.O.A.T. Climb & Cryo, LLC v. Twin City Fire Ins. Co.*, 548 F. Supp. 3d 688, 695 (N.D. Ill. 2021); *cf. Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307–08 (7th Cir. 2021) (concluding that the plaintiff failed to allege direct physical loss or damage to its property, even though the plaintiff alleged that it installed plexiglass partitions and hand sanitizer stations in the hotel to combat the COVID-19 virus).

Beaumont's allegation that the COVID-19 virus caused it to suspend or limit operations and made its properties unfit for their intended use likewise fails to support a claim. The presence of the COVID-19 virus at insured property does not amount to complete physical dispossession of property for purposes of direct physical loss or damage. *See Paradigm Care*, 33 F.4th at 421 ("Absent such [physical] alteration, direct physical loss occurs only when a risk causes complete physical dispossession of property, and the COVID-19 virus does not."); *Q Excelsior Italia Srl v. Zurich Am. Ins. Co.*, No. 21 C 1166, 2022 WL 17093361, at *3 (N.D. Ill.

8

Nov. 21, 2022) (collecting cases); *see also Sandy Point*, 20 F.4th at 335 (noting that—unlike the complete physical dispossession of property in gas-infiltration cases—the plaintiff could still use its property for another purpose, despite the plaintiff's inability to use the property for its preferred use due to the presence of the virus and closure orders); *Windy City Limousine Co., LLC v. Cincinnati Fin. Corp.*, No. 21-3296, 2022 WL 1965903, at *1 (7th Cir. June 6, 2022) (holding that the plaintiff's claim that the virus made its business "effectively inoperable" did not constitute physical dispossession because the plaintiff's properties "were not rendered uninhabitable or unsuitable for all other conceivable uses"); *Sweet Berry Cafe, Inc. v. Soc'y Ins., Inc.*, 193 N.E.3d 962, 974 (Ill. App. Ct. 2022) ("[U]nlike a noxious gas, for example, the virus's presence is easily remediated by routine, not specialized or costly, cleaning and disinfecting or will die off after a few days . . . ."). In a nutshell, that COVID-19 made Beaumont's properties unsafe or unfit for their intended use is insufficient to plead complete physician dispossession.

Therefore, Beaumont fails to state claim for coverage under the business income and extra expense provisions of the Policy.

### B. Civil Authority Coverage Provision

The Court next considers Beaumont's claims for coverage under the Policy's civil authority provision. That provision states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Policy at 26.) The Policy defines "Covered Causes of Loss" as "Risks of Direct Physical Loss unless the loss is" otherwise excluded or limited by other provisions of the Policy. (*Id.* at 35.)

Here, Beaumont alleges that the statewide and local governmental orders prohibited access to its properties and the area immediately surrounding the properties, and that the orders were issued in response to dangerous physical conditions resulting from a covered cause of loss. (Compl. ¶ 115.) Nonetheless, the Court agrees with Defendants that Beaumont cannot satisfy the requirements of the civil authority provision because the text of the orders themselves refutes Beaumont's conclusory assertions. *Cf. Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

First, there was no damage to nearby property caused by a covered cause of loss—a requirement to trigger the civil authority provision—since the COVID-19 virus does not cause direct physical loss to property. *Cf. Paradigm Care*, 33 F.4th at 422 (finding that there was no coverage under an insurance policy's civil authority provision because the COVID-19 virus does not cause physical loss or damage to property). Second, none of the orders that Beaumont references indicate that hotels were completely barred from operating during the pandemic, such that Beaumont was prohibited from accessing its premises. For instance, none of Governor Abbott's executive orders cited by Beaumont directed hotels to close or stop providing all services. (*See* Texas Governor & Texas Commissioner Orders.) Moreover, Harris County Judge Hidalgo's order on March 19, 2020, permitted hotels to provide room service and for hotel bars to provide take-out and delivery services. (Houston Mayor & Harris County Judge Orders at 7.) And Judge Hidalgo's subsequent stay-at-home order on March 24, 2020, described hotels servicing airport and airline activities as essential businesses. (*Id.* at 15.) Finally, the orders were

10

not enacted in response to dangerous physical conditions or damage at the insured premises or neighboring property. The express purposes of the orders were to "slow[] the spread of COVID-19 and protect[] public health and safety" and "to take measures to reduce the possibility of exposure to COVID-19 and promote the health and safety of Harris County residents." (Texas Governor & Texas Commissioner Orders at 18; Houston Mayor & Harris County Judge Orders at 6.)

In sum, Beaumont cannot claim coverage under the Policy's civil authority, business income, or extra expense provisions. Because Beaumont has not plausibly alleged that that its losses are covered under the Policy, the Court need not reach Defendants' alternative argument that the Policy's exclusions would independently bar Beaumont's claims.

### C. Texas Law

The outcome would be the same even if Texas law applied, as Beaumont advocates. Beaumont contends that under Texas law, the meaning of "direct physical loss" is ambiguous, and that it is reasonable to interpret the term as meaning the deprivation of use of property because of a viral contamination. To reach that conclusion, Beaumont urges the Court to find that the Fifth Circuit has incorrectly applied Texas law and erroneously interpreted how the Texas Supreme Court would rule on the issue.

Like Illinois courts, Texas courts look to the plain and ordinary meaning of terms in an insurance policy and enforce unambiguous terms as written. *Ferrer & Poirot, GP v. Cincinnati Ins. Co.*, 36 F.4th 656, 659 (5th Cir. 2022). Additionally, terms are ambiguous only if they are subject to more than one reasonable interpretation. *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455 (5th Cir. 2022). While the Texas Supreme Court has not decided what "direct physical loss" means in the context of COVID-19 business interruption cases, the Fifth Circuit analyzed how Texas courts have interpreted the terms "physical" and "loss" in

11

analogous policy language to determine how the Texas Supreme Court would interpret the phrase. *See id.* at 455–56. The Fifth Circuit, applying Texas law, has held that physical loss in a commercial property insurance policy requires a tangible alteration or deprivation of property. *See, e.g.*, *Ferrer*, 36 F.4th at 659; *Terry Black's*, 22 F.4th at 455–56; *Aggie Invs., L.L.C. v. Cont'l Cas. Co.*, No. 21-40382, 2022 WL 257439, at *1 (5th Cir. Jan. 26, 2022). More specifically, the Fifth Circuit has found that COVID-19 does not physically damage property; rather, it physically harms people. *See Ferrer*, 36 F.4th at 660. And there is no tangible alteration or deprivation of property even when a business is directed to suspend all its services due to COVID-19. *Aggie Invs.*, 2022 WL 257439, at *2; *see also Terry Black's*, 22 F.4th at 458 (finding that the policy's business interruption and extra expense clause unambiguously requires **a loss of property**, not the loss of *use* of property).

Beaumont first argues that the Fifth Circuit's assessment of how the Texas Supreme Court would rule is erroneous because its assessment of how the Louisiana Supreme Court would rule in COVID-19 business interruption cases was wrong. Specifically, in *Q Clothier New Orleans, L.L.C. v. Twin City Fire Insurance Co.*, 29 F.4th 252, 260 (5th Cir. 2022), the Fifth Circuit held that the Louisiana Supreme Court would interpret direct physical loss to require a tangible alteration to property or deprivation of property. Beaumont cites *Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, No. 2021-CA-0343, 2022 WL 2154863 (La. Ct. App. June 15, 2022), for the proposition that the Fifth Circuit's interpretation of Louisiana law was faulty. Indeed, in *Cajun Conti*, a Louisiana appellate court subsequently concluded that direct physical loss could reasonably be interpreted to include contamination of the insured premises by COVID-19 and loss of use. *Id.* at *7–8. But the Louisiana Supreme Court later reversed the ruling of the lower appellate court, holding that direct physical loss does not mean the loss of use

12

of property; instead, it requires tangible loss or damage to property—which the presence of COVID-19 at a property cannot do. *See Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, No. 2022-C-0134, 2023 WL 2549132, at *3–5 (La. Mar. 17, 2023); *see also S. Orthopaedic Specialists, L.L.C. v. State Farm Fire & Cas. Co.*, 64 F.4th 657, 660 (5th Cir. 2023) (noting that the Louisiana Supreme Court in *Cajun Conti* confirmed the Fifth Circuit's assessment of how it would decide the issue). And more importantly, the Fifth Circuit's interpretation of how the Louisiana Supreme Court would rule has no bearing on whether its interpretation of how the Texas Supreme Court would rule is correct.

Next, Beaumont points to *North American Shipbuilding, Inc. v. Southern Marine & Aviation Underwriting, Inc.*, 930 S.W.2d 829 (Tex. Ct. App. 1996), for the proposition that under Texas law, direct physical loss or damage occurs when a property is transformed from a satisfactory state to an unsatisfactory state; in other words, from suitable to unsuitable. According to Beaumont, COVID-19 transforms property in such a manner. In *North American Shipbuilding*, the court held that losses from defective welds on a ship did not constitute physical loss or damage to the vessel because the welds were never "in an initial satisfactory state that was changed by some external event into an unsatisfactory state;" rather, the welds were already in a damaged state. 930 S.W.2d at 833–34 (quoting *Trinity Indus., Inc. v. Insurance Co. of N. Am.*, 916 F.2d 267, 270–71 (5th Cir. 1990)).

The Fifth Circuit relied on *North American Shipbuilding* and other cases in determining that Texas appellate courts have construed "physical" to require tangible alterations to property. *Terry Black's*, 22 F.4th at 456 (noting that the court interpreted "physical loss or damage" to require "an initial satisfactory state that was changed by some external event into an unsatisfactory state"). The Court sees nothing erroneous in the Fifth Circuit's determination.

13

Indeed, in *Trinity*—the case on which the *North American Shipbuilding* court depends for its holding—the court gives an example of a change from an initial satisfactory state to an unsatisfactory state: a car that was undamaged before a collision dented the car's bumper. *Trinity Indus.*, 916 F.2d at 271. This type of change is clearly a tangible alteration.

In addition, Beaumont cites *Cinemark Holdings, Inc. v. Factory Mutual Insurance Co.*, 500 F. Supp. 3d 565, 569 (E.D. Tex. 2021), for the proposition that under Texas law, direct physical loss may occur when COVID-19 is present at the insured premises and damages the property by altering the content of the air and making the property unsafe for human use. In *Cinemark Holdings*, the court denied the insurer's motion for judgment on the pleadings, reasoning that the plaintiff stated a plausible claim for business interruption coverage with its allegation that COVID-19 was present at its property and changed the content of the air. *Cinemark Holdings*, 500 F. Supp. 3d at 569–70. But *Cinemark Holdings* predates the Fifth Circuit's recent rulings discussed above. Moreover, in a subsequent summary judgment ruling, the same court in *Cinemark Holdings, Inc. v. Factory Mutual Insurance Co.*, No. 4:21-CV-00011, 2023 WL 2588548, at *9 (E.D. Tex. Mar. 21, 2023), acknowledged that following its prior decision, "the Fifth Circuit has consistently rejected the notion that COVID-19 causes 'physical loss or damage' to property." As such, the court granted the insurer's summary judgment motion. *Id.* at *10.

Finally, Beaumont points to a jury verdict in *Baylor College of Medicine v. Underwriters at Lloyds Syndicates*, No. 2020-533156 (Tex. Dist. Ct. Harris Cnty. Aug. 31, 2022), finding that COVID-19 caused direct physical loss or damage to the plaintiff's property. (Pl.'s Notice of Suppl. Authority, Ex. 1 at 3, Dkt. No. 31-1.) The Court does not view a state court jury verdict as

14

persuasive or indicative of how the Texas Supreme Court would decide the issue, especially in light of the Fifth Circuit's rulings to the contrary.

At bottom, the Court concurs with the Fifth Circuit's interpretation of Texas law, and it finds no conflict between Texas law and Illinois law. Without any such conflict, Illinois law governs. For the reasons previously discussed, Beaumont's claims fail under Illinois law. Counts I, II, and III are thus dismissed.

### III.    § 155 of Illinois Insurance Code (Count IV)

Beaumont also asserts a claim for unreasonable denial of its insurance claim under 215 ILCS 5/155. But "where no benefits are owed under the terms of an insurance policy, a claim of bad-faith denial under 215 ILCS 5/155 necessarily fails." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021). Consequently, Count IV is dismissed because the Court has concluded that the Policy does not cover Beaumont's alleged damages.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 25) is granted. The Complaint is initially dismissed without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily . . . a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). Beaumont is given until March 28, 2024 to file an amended complaint. If it declines to file an amended complaint by that date, the Court will dismiss this case with prejudice and enter final judgment.

ENTERED:

Dated:  March 13, 2024

_____
Andrea R. Wood
United States District Judge